UNITED STATES DISTRICT COURT                                 C/M
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X

CHRISTOPHER GRAY,

                                       **MEMORANDUM DECISION**
                 Petitioner,              **AND ORDER**

              - against -                    17-cv-6324 (BMC)

JAMIE LAMANNA,

                           Respondent.

----------------------------------------------------------- X

**COGAN**, District Judge.

       Petitioner seeks habeas corpus relief under 28 U.S.C. § 2254 for his state court conviction, following a jury trial, of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree. The facts will be set forth below as necessary to address each of petitioner's points of error, but to summarize, petitioner and two accomplices, Roberto Rodriguez and Anthony Montalvo, robbed two men, Randon Rains and Dennis Mack, at gunpoint in the lobby of a building. When Mack attempted to flee, petitioner and Rodriguez gave chase, both shooting at Mack as he fled; Mack was shot to death. A police officer, Tomas Castro, heard the shots and arrested Rodriquez at the scene; another officer, Deputy Inspector John Corbisiero, apprehended petitioner about a half-block away.

       Petitioner raises three points of error: (1) there was insufficient evidence to support the verdict; (2) his trial counsel was ineffective for (a) failing to offer a video of the lobby confrontation at a suppression hearing; (b) not objecting to the admission of petitioner's arrest photograph at trial; and (c) stipulating to DNA evidence rather than making the prosecution call the expert witness; and (3) a motions court violated his Fourth Amendment rights by allowing

Officer Tomas Castro to identify petitioner at trial.  The first claim is procedurally barred.  The first two parts of the ineffective assistance claim do not meet the standard for relief under the Antiterrorism and Effective Death Penalty Act, 28 U.S.C. § 2254 ("AEDPA"), and the third part of that claim does not warrant relief under *de novo* review.  The third claim for failure to suppress evidence is not cognizable on federal habeas corpus review.  The petition is therefore denied.

## I.     Insufficient Evidence

In both this proceeding and in his direct appeal, petitioner argued that the evidence was legally insufficient on the issue of identification.  He claimed that the dual identifications of him by Officer Castro and the surviving victim, Rains, were not sufficiently reliable to sustain the conviction.  The Appellate Division rejected petitioner's argument, holding that it was "unpreserved for appellate review."  People v. Gray, 23 N.Y.S.3d 373, 375 (App. Div. 2d Dep't 2016), lv denied, 27 N.Y.3d 998 (2016) ("Gray II").  "In any event," the Appellate Division continued, "viewing the evidence in the light most favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] identity beyond a reasonable doubt."  Id. (citations omitted).

The Appellate Division's holding that petitioner's claim was "unpreserved for appellate review" creates a procedural bar to habeas corpus review in this Court.  A federal court "will not take up a question of federal law presented in a case 'if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment."  Lee v. Kemna, 534 U.S. 362, 375 (2002) (cleaned up) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  "The rule applies with equal force whether the state-law ground is substantive or procedural."  Id.  Thus, when a state court rejects a petitioner's claim because he failed to comply with a state procedural rule, the procedural bar may constitute an

adequate and independent ground for the state court's decision. See Coleman, 501 U.S. at 729-30; Murden v. Artuz, 497 F.3d 178, 191-92 (2d Cir. 2007).

State procedural grounds are adequate to support the judgment, and foreclose federal review, if they are "firmly established and regularly followed" in the state. Lee, 534 U.S. at 376 (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)). Moreover, if a state court rejects a specific claim on an adequate and independent state law ground, then a federal court ordinarily should not review the merits of the claim, even if the state court addressed the merits of the claim in the alternative. See Harris v. Reed, 489 U.S. 255, 264 n.10 (1989) (noting that state courts "need not fear reaching the merits of a federal claim in an *alternative* holding" because, "[b]y its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law.").

The Appellate Division's holding that petitioner's claim was "unpreserved for appellate review" was firmly in line with New York law. It is well-established that a general objection at the close of the prosecution's case, merely referencing a lack of a *prima facie* case and not stating specific grounds, will not preserve a particular argument as to why the evidence is insufficient. See Hayward v. Brown, No. 09-cv-6495, 2010 WL 2629037, at *13 (S.D.N.Y. July 1, 2010) (collecting cases); see also Garvey v. Duncan, 485 F.3d 709, 714-15 (2d Cir. 2007) (collecting cases to show that "New York's highest courts uniformly instruct that to preserve a particular issue for appeal, [a] defendant must specifically focus on the alleged error"). Here, defense counsel moved for dismissal at the conclusion of the prosecution's case, stating:

> [T]he People have failed to establish a *prima facie* case. It's been a relatively quick proceeding, and I do not need to detail for the Court the evidence or, more properly, the lack of it. And I would suggest, your Honor, that the matter should be dismissed and should not be permitted to go the jury. I'll rest on the record.

3

This exchange gave the trial court no notice that defense counsel was challenging the adequacy of the identification evidence, and thus the error was unpreserved for appellate review.

Nevertheless, a federal court may still review a procedurally defaulted claim on the merits if the petitioner can either (A) "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law" or (B) "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. For the first avenue, cause may be demonstrated with "a showing that . . . the procedural default is the result of ineffective assistance of counsel." Bossett v. Walker, 41 F.3d 825, 829 (2d Cir. 1994) (quoting Murray v. Carrier, 477 U.S. 478, 488 (1986)). However, the ineffective assistance claim must itself have been exhausted in the state court. See Edwards v. Carpenter, 529 U.S. 446, 451-52 (2000). To adequately exhaust a claim, a petitioner must have "fairly presented" the claim to the state court. Daye v. Att'y Gen. of State of N.Y., 696 F.2d 186, 191 (2d Cir. 1982) (en banc).

Although petitioner raised a claim of ineffective assistance of trial counsel on appeal, he never contended that his trial counsel was ineffective for failing to preserve the point of legal insufficiency. He therefore cannot rely on ineffective assistance of counsel to avoid the procedural bar, see Edwards, 529 U.S. at 451-52, and the record suggests no other avenue of establishing cause for the default or prejudice.

Nor does this case present a miscarriage of justice. That exists in extraordinary cases, such as where a constitutional violation results in the conviction of an individual who is actually innocent. See Murray, 477 U.S. at 496. Petitioner's argument is that neither Officer Castro nor Rains saw him long enough to make the positive identification to which they each testified at

4

trial. But that argument is closer to one about the weight of the evidence than one about the insufficiency of the evidence. A "weight of the evidence" argument is not cognizable on federal habeas corpus review. See Mobley v. Kirkpatrick, 778 F. Supp. 2d 291, 311 (W.D.N.Y. 2011) ("Federal courts routinely dismiss claims attacking a verdict as against the weight of the evidence on the basis that they are not federal constitutional issues cognizable in a habeas proceeding."); Correa v. Duncan, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (holding that a federal court is "precluded from considering" a "weight of the evidence" claim because "[a] 'weight of the evidence' argument is a pure state law claim grounded in New York Criminal Procedure Law § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles"). Petitioner made his argument about inadequate time for identification to the jury. That was the appropriate place to make it and the jury, evaluating the credibility of Officer Castro and Rains, rejected it.

Since there is neither cause and prejudice nor a miscarriage of justice from the Appellate Division's holding that the argument was unpreserved, I reject petitioner's argument as procedurally barred.[1]

## II. Ineffective Assistance of Counsel

Petitioner contends that his trial counsel was ineffective because, at a pretrial suppression hearing, counsel failed to seek the introduction of a videotape that showed the confrontation in the lobby before Mack was chased and shot to death and, at trial, counsel failed to object to the

---

[1] In his § 440 motion, petitioner advanced some claims that were derivative of his claim that Officer Castro and Rains should not have been believed or permitted to identify him at trial. He argued that a finding that the two witnesses were lying would mean that he was actually innocent and that the prosecutor engaged in misconduct by presenting witnesses that he knew, or should have known, were lying. However, evidence on a legal insufficiency claim must be viewed in the light most favorable to the prosecution. See Jackson v. Virginia, 443 U.S. 307, 319 (1979). Since the jury believed the witnesses' testimony and, as discussed below, petitioner had the effective assistance of counsel, there is no basis for an argument of actual innocence or prosecutorial misconduct.

introduction of petitioner's arrest photograph.  The Appellate Division rejected petitioner's arguments on the merits, stating: "[H]e has not demonstrated that his trial counsel was ineffective under either federal or state constitutional standards.  The record establishes that defense counsel provided meaningful representation as a whole, and [petitioner] has failed to show the absence of strategic or other legitimate explanations for his attorney's alleged shortcomings."  Gray II, 23 N.Y.S.3d at 375 (citation omitted).

Because the Appellate Division decided the first two parts of petitioner's ineffective assistance claim on the merits, my review of that ruling is subject to the limitations of AEDPA.  AEDPA permits reversal only if a state court's legal conclusion is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The decision of a state court is "contrary" to clearly established federal law within the meaning of § 2254(d)(1) if it is "diametrically different" from, "opposite in character or nature" to, or "mutually opposed" to the relevant Supreme Court precedent.  Williams v. Taylor, 529 U.S. 362, 405 (2000) (quoting another source).  A state-court decision involves "an unreasonable application" of clearly established federal law if the state court applies federal law to the facts of the case "in an objectively unreasonable manner."  Brown v. Payton, 544 U.S. 133, 141 (2005).

The Supreme Court has made clear that the AEDPA standard of review is extremely narrow and is intended only as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  Ryan v. Gonzales, 568 U.S. 57, 75 (2013) (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  Harrington, 562 U.S. at

6

101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). The Supreme Court has repeatedly admonished lower courts for not affording sufficient deference to state court determinations of constitutional issues. See, e.g., White v. Wheeler, 577 U.S. 73, 76-77 (2015) (per curiam) ("This Court, time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.'" (quoting Burt v. Titlow, 571 U.S. 12, 19 (2013))).

In seeking to prove ineffective assistance of counsel, petitioner's burden is doubly difficult because he must prevail not only under the narrow AEDPA standard set forth above, but also under the similarly narrow two-prong standard for ineffective assistance of counsel set out in Strickland v. Washington, 466 U.S. 668 (1984). The first prong requires petitioner to show that counsel's performance fell below "an objective standard of reasonableness" under "prevailing professional norms." Id. at 688. A court must apply a "strong presumption of competence" and "affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as they did." Cullen v. Pinholster, 563 U.S. 170, 196 (2011) (quoting another source). The second prong requires petitioner to demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington, 562 U.S. at 112. Moreover, as the Second Circuit has noted, "[t]he prejudice inquiry is . . . ineluctably tied to the strength of the prosecution's evidence." Garner v. Lee, 908 F.3d 845, 862 (2d Cir. 2018).

A. The Videotape

Petitioner's argument is that the videotape would have decisively impeached Rains's testimony that the confrontation lasted five or ten minutes because the actual videotape was only

7

90 seconds. Petitioner argues that this inconsistency, in turn, would have caused the motions court to find that Rains had inadequate time to later identify petitioner as the perpetrator, and Rains would not have been permitted to identify him at trial.

Petitioner has not cleared the double-hurdle placed in his path by the combination of AEDPA and Strickland's requirements. Whatever impeachment value the videotape might have had was minimal and might well have been overcome by the prejudicial effects of the videotape itself. This is because Rains's testimony about the length of the confrontation was equivocal. He testified that it was "approximately" five minutes and "five, ten minutes, give or take." Rains even qualified that answer by saying, "that's how long it felt like." Trial counsel's decision not to confront Rains with the videotape hardly amounts to forgoing a crucial opportunity. Victims of violent crime often think that the altercations last longer than they actually do, and there are few things that can extend the perception of time longer than being attacked and robbed at gun point.

But aside from this lack of probative value, the video also carried the potential for prejudice. The videotape showed that the lobby was well lit and small; that one of the three assailants was black, consistent with Rains's identification; that the assailant who Rains identified as petitioner had closely approached Rains several times; and that only this assailant brandished a gun. The videotape also showed an unobstructed close-up, albeit brief, of the assailant's face. Thus, there was a substantial risk that the video would have enhanced Rains's credibility rather than hurt it.

At least, petitioner's trial counsel could have reasonably so concluded. And even if fair-minded jurists could disagree that trial counsel's determination was objectively reasonable, that is sufficient to preclude relief under Strickland as viewed through the prism of AEDPA.

B. **The Arrest Photograph**

The issue relating to the arrest photograph requires more background. The conviction under review in this case is the second conviction that petitioner had for these crimes. His first conviction was overturned by the Appellate Division based on its finding that Deputy Inspector Corbisiero, responding to a radio run seeking assistance at the scene of the shooting, lacked probable cause to arrest petitioner, even though he had probable cause to stop him. See People v. Gray, 938 N.Y.S.2d 633, 634 (App. Div. 2d Dep't 2012) ("Gray I"). Because Officer Castro and Rains had identified petitioner from a lineup following this arrest, the Appellate Division suppressed the lineup identifications as fruit of the poisonous tree. It remanded the case for a new trial, to be preceded by an independent source hearing to determine if the in-court identifications by Officer Castro and Rains would have been made without their having viewed the lineup.

On remand, the hearing court (with same judge who tried the case the first time) found that both Officer Castro and Rains had seen petitioner well enough during the commission of and flight from the crime that they would have identified him at trial even without the lineup. It therefore permitted the identification at the second trial. The second trial resulted in the conviction under review here.

On direct appeal from that conviction and in this habeas corpus proceeding, petitioner contends that his trial counsel was ineffective because he did not object to the introduction of defendant's arrest photograph. Although the Appellate Division in Gray I did not comment on the arrest photograph, petitioner's contention is that since the lineup identifications were suppressed, it follows that the arrest photograph that preceded them would also have been suppressed had trial counsel objected.

9

As noted above, the Appellate Division rejected this argument on the merits in Gray II. Thus, I review the Appellate Division's application of Strickland using the AEDPA standard described above. Once again, petitioner cannot meet that standard.

As to objective reasonableness, petitioner's trial counsel used the photograph in his closing argument to raise a question about the integrity of the police procedure and posit that the police arrested the wrong man. That was a strategic choice. He noted that the assailant was wearing a black jacket in the video of the lobby confrontation, but petitioner was not wearing one in the arrest photograph. Counsel then observed that the police had not vouchered a black jacket. In addition, petitioner's trial counsel highlighted that neither Rains nor Officer Castro had testified that they saw petitioner wearing a camouflage shirt. Defense counsel therefore asked the jury to consider: why had this black jacket disappeared?

As to prejudice, petitioner argues that the camouflage shirt petitioner was wearing in the arrest photo corroborated the video, which, he alleges, showed the tail of a camouflage shirt under the black jacket. But when arguing that the evidence was insufficient to support a conviction, petitioner argued just the opposite – that "the video is not clear enough to establish that the pattern on the shirt is camouflage, and neither Rains nor Castro described the black gunman as wearing a camouflage shirt." The inconsistency in petitioner's position illustrates the lack of prejudice from the arrest photograph.

Again, the question before me under AEDPA is not whether I would have granted a motion to suppress, or even whether, on *de novo* review, I would conclude that defense counsel was ineffective. Rather, the question is whether the Appellate Division's ruling that trial counsel was not ineffective for not objecting to the arrest photograph was an unreasonable application of

10

Strickland and its progeny. At the very least, fair-minded jurists could disagree as to the answer to that question, which means the argument falls short of warranting federal habeas corpus relief.

### C. The DNA Evidence

In addition, petitioner reprises a claim from a post-conviction motion to vacate under New York Criminal Procedure Law § 440.10 – namely, that his attorney should have required the prosecution to call an expert witness for DNA evidence instead of stipulating to the admission of that evidence. The § 440 court rejected that argument as procedurally barred because petitioner had raised this claim on direct appeal and the Appellate Division had rejected it. In the instant habeas corpus proceeding, however, petitioner asserts that this was error because the issue was not presented to the Appellate Division. Respondent concedes that the § 440 court's ruling was exorbitant. See Fulton v. Graham, 802 F.3d 257, 262 (2d Cir. 2015). Because the § 440 court did not alternatively rule on the merits, I will consider this claim *de novo*.

In his post-conviction § 440 motion, petitioner argued that his trial counsel was ineffective for stipulating to the admission of DNA evidence rather than making a DNA expert testify. This evidence concerned a DNA analysis performed on the two pistols involved in the shooting. That analysis was inconclusive. The expert's conclusion as to some of the samples from the pistols was that they were "not suitable for comparison because of too few alleles." Other samples, however, permitted her to conclude that the deceased victim, Mack, was not a contributor. Some of the samples also showed "a mixture of DNA of at least two people," but not enough to identify any "major contributor." In addition, one of the samples showed that Rodriguez "could be" a contributor. In the remaining samples, the expert concluded that petitioner's DNA was not detected. Thus, although the analysis did not inculpate petitioner, it did not definitively exclude him either.

Petitioner argued that it would have enhanced his identification defense if the expert had testified live, as she had done at his first trial, to the inability to conclusively identify his DNA on the pistols, rather than having that expressed in a stipulation. Petitioner also argued in his § 440 motion that he had objected to the stipulation at trial but his counsel had ignored or overruled him.[2]

Under any standard of review, petitioner's claim fails under Strickland. First, petitioner's contention that he objected to the stipulation is supported only by his own self-serving statement and contradicted by the record. The record shows his counsel advising the Court more than once that he had discussed the stipulation with petitioner and that petitioner had consented to it. Counsel first stated: "I had indicated to the defendant that it was my understanding of the way this Court chose to operate and we certainly have no objection to it. The stipulation is, of course, critical." Later, counsel stated:

> I've had the opportunity to review this. I've also had the opportunity to let defendant see this. And it is our position that this stipulation be entered, agreed to and, of course, marked and, ultimately, the jury will have the opportunity to read this at their leisure.

There were other times when trial counsel, in petitioner's presence, enthusiastically embraced the stipulation. The stipulation was also read into the record without an objection from petitioner or even a conference with his attorney.

More importantly, even had trial counsel not consulted with petitioner, counsel was entitled to decide whether he could make more use of a witness or a concisely worded

---

[2] Petitioner derivatively argued that his trial counsel was ineffective for not calling a competing expert or getting the names of the persons whose DNA actually appeared on the weapons. But there is nothing to suggest that another expert would have arrived at any different conclusions than those expressed in the stipulation, i.e., that there were insufficient alleles to identify anyone on some of the samples and that none of them identified petitioner. Similarly, petitioner referenced "counsel's failure to request . . . Brady material" and "exculpatory evidence," but there is nothing to suggest that the prosecutor knew whose DNA was on the weapons beyond what was stated in the stipulation.

stipulation. See United States v. Cohen, 427 F.3d 164, 170 (2d Cir. 2005) ( "trial decisions to offer or stipulate to certain evidence . . . are primarily matters of trial strategy and tactics . . . and thus are virtually unchallengeable absent exceptional grounds for doing so"); United States v. Gaskin, 364 F.3d 438, 468 (2d Cir. 2004) ("counsel's decision to stipulate to certain evidence . . . involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation" (quoting Strickland, 466 U.S. at 690-91)); Mejia v. Artus, No. 12-cv-2241, 2016 WL 1305162, at *12 (E.D.N.Y. March 31, 2016) ("The decision to stipulate to the DNA report versus requiring the medical examiner to testify to her findings was a sound trial strategy that did not constitute ineffective assistance."); Williams v. United States, No. 06-cv-319, 2014 WL 1911432, at *8 (S.D.N.Y. May 13, 2014) ("[G]iven the high degree of deference afforded to reasoned decisions concerning defense strategy, courts generally decline to second-guess an attorney's choice to stipulate.").

Also, trial counsel knew exactly what he was doing. He was the same lawyer who had tried petitioner's first case, and thus had knowledge of almost exactly what the DNA expert would say and how she would appear on the stand. And in his closing argument, he made all the use of the stipulation that any lawyer could have made from witness testimony had it gone his way:

> Let's start with what isn't here. From the weapons recovered you learned that there are no prints on those weapons and no DNA that can be traced to this man. You heard, too, on a stipulation – and that stipulation will be sent into the jury room for you to look at. You can read it and read it as many times as you want. But the .38 has DNA on it from two people, and that DNA does not match that of the defendant on a swab taken.
>
> Now, you're probably going to see things in this case that you wish you've never seen, hear things you wish you've never heard. This is a .38. There was testimony that Mr. Gray is firing this weapon. Now, there is not a print recovered here. Maybe a person is a nonsecretor. There are those people that do not secret. DNA, well, DNA, you just take a swab. You'll get some. You may not get enough but you'll get some. Run a cotton swab in your mouth, run your hand

13

>across the barrel of this weapon. And you will not be able to take this weapon into the jury room. This is kind of a serrated thing right here. If that doesn't pull off microscopic cells, skin cells, well what will?
>
>So you have the right as jurors to say, well, there is none of this. There is none of that. And you can base your verdict on the evidence and on the lack of evidence as well. So we dispense there with DNA, prints and what could, in another case, be considered solid scientific evidence.

There was, thus, nothing objectively unreasonable about trial counsel's decision to stipulate instead of hearing a more fragmented version of this evidence in the form of testimony.

Moreover, as noted above counsel had already heard this testimony in the first trial. Consequently, petitioner suffered no prejudice because calling the witness, at best, would have led trial counsel to make the same argument that he ultimately made.[3]

Petitioner has therefore failed to show that he received ineffective assistance of trial counsel under Strickland.

## III. The Suppression of Rains's and Officer Castro's In-Court Identifications

This argument challenges the independent source determination of the hearing court before petitioner's second trial. The hearing court concluded that Rains and Officer Castro saw petitioner clearly enough during the incident that they could identify him in court even if the lineup evidence was suppressed. Petitioner's argument is an extension of the fruit of the poisonous tree position that led to his second trial. It is also similar to petitioner's legal insufficiency argument, in which he contends that the two witnesses could not have reliably identified him, and, therefore, the hearing court erred in determining that there was a source

---

[3] One might question why the prosecution chose to present DNA evidence at all, whether by witness or stipulation, in light of the fact that it did not incriminate petitioner. Perhaps the reason is that prosecutors have become sensitive to the "CSI effect," where jurors have been exposed to legal proceedings in the media and have developed an expectation of receiving the results of DNA testing, the absence of which might cause them to question the thoroughness of the police investigation. See generally Sweney v. Dep't of Corr., No. 09-cv-119, 2011 WL 1376766, at *8 (W.D.N.Y. Apr. 11, 2011) (noting a survey in which mock jurors thought that DNA evidence should be analyzed in all criminal cases and concluding that the "high percentage of belief in DNA evidence correlates to the CSI effect.").

14

independent of the lineup – the witnesses' encounters with petitioner – sufficient to support their in-court identification.

This claim is not cognizable on federal habeas corpus review because it is subject to the rule in Stone v. Powell, 428 U.S. 465 (1976). There, the Supreme Court held that federal habeas corpus review is unavailable for Fourth Amendment claims where the petitioner had the opportunity to fully litigate the claim in state court. Id. at 482 ("[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial."). The Supreme Court reasoned that, in the habeas context, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." Id. at 494–95.

Based on Stone, the Second Circuit has held that habeas review of decisions implicating the exclusionary rule is limited to situations in which "the state provides no corrective procedures at all to redress Fourth Amendment violations" or where there is a corrective procedure "but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process." Gates v. Henderson, 568 F.2d 830, 840 (2d Cir. 1977) (en banc). Courts have repeatedly recognized that New York provides an adequate corrective procedure for Fourth Amendment claims. See Capellan v. Riley, 975 F.2d 67, 70 n.1 (2d Cir. 1992); Guzman v. Greene, 425 F. Supp. 2d 298, 318 (E.D.N.Y. 2006), aff'd, 337 F. App'x 27 (2d Cir. 2009); Crispino v. Allard, 378 F. Supp. 2d 393, 413 (S.D.N.Y. 2005). For this reason, federal courts within this Circuit have almost uniformly held that challenges to New York State court rulings concerning the reach of the exclusionary rule are not reviewable under Stone v. Powell. See

Philbert v. Brown, No. 11-cv-1805, 2012 WL 4849011, at *8 n.5 (E.D.N.Y. Oct. 11, 2012); Garcia-Lopez v. Fischer, No. 05-cv-10340, 2007 WL 1459253, at *11 (S.D.N.Y. May 17, 2007); Crispino, 378 F. Supp. 2d at 412–13.[4]

Here, there is no question of the adequacy of the state law remedy. Petitioner fully litigated the Fourth Amendment issues through a hearings court on two occasions and availed himself of appellate review. Federal habeas corpus review is therefore not available for this claim.

## CONCLUSION

The petition for a writ of habeas corpus is denied and the case is dismissed. Because petitioner has failed to make a substantial showing of a denial of a constitutional right, no certificate of appealability shall issue. See 28 U.S.C. § 2253(c)(2). The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purposes of any appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

Digitally signed by Brian M. Cogan
U.S.D.J.

Dated: Brooklyn, New York
October 16, 2021

---

[4] Petitioner cannot evade Stone v. Powell by labeling this claim as a due process one. See Kelly v. Griffin, No. 12-cv-3384, 2013 WL 1833240, at *3 (E.D.N.Y. May 1, 2013) (holding that Stone v. Powell barred a habeas claim based upon an independent source hearing, where the petitioner essentially argued that the judge "reached the wrong result" rather than suggesting "that the suppression court refused to hear from any particular witness, or eliminated cross-examination, or cut off the hearing prematurely").